REINECKE, COLLECTOR OF INTERNAL REVENUE, *v.* NORTHERN TRUST COMPANY.

No. 90. Argued December 4, 5, 1928.—Decided January 2, 1929.

Mr. *Thomas H. Lewis, Jr.,* with whom *Solicitor General Mitchell, Assistant Attorney General Mabel Walker Willebrandt,* and *Messrs. Clarence M. Charest,* General Counsel, Bureau of Internal Revenue, and *Sewall Key* were on the brief, for petitioner.

*Messrs. J. F. Dammann, Jr.,* and *Wm. B. McIlvaine,* with whom *Mr. Stuart J. Templeton* was on the brief, for respondent.

*Mr. Elihu Root, Jr.,* filed a brief as *amicus curiae* on behalf of the Home Trust Company, by special leave of Court.

*Messrs. Edward H. Blanc, Russell L. Bradford,* and *Henry C. Eldert* filed a brief as *amici curiae* on behalf of the Farmers' Loan & Trust Company, by special leave of Court.

MR. JUSTICE STONE delivered the opinion of the Court.

Respondent executor brought suit in the District Court for northern Illinois to recover from petitioner, a collector of Internal Revenue, the amount of a tax alleged to have been illegally assessed and collected upon the estate of respondent's testator under the Revenue Act of 1921, c. 136, 42 Stat. 227. Judgment of the district court for the executor, upon an overruled demurrer, was affirmed by the Court of Appeals for the Seventh Circuit. 24 F. (2d) 91. This Court granted certiorari April 23, 1928, 277 U. S. 579.

Respondent's testator died May 30, 1922. On various dates between 1903 and 1919 he established seven trusts by deed which are conceded not to have been in contemplation of death. Two of them were created respectively in 1903 and 1910. They are identified in the record as Trusts No. 1831 and No. 3048, and referred to here as the "two trusts." By them the income from the trusts was reserved to the settlor for life and on his death the income of each trust was to be paid to a designated person until the termination of the trust as provided in the trust instrument, with remainders over. By the terms of each trust there was reserved to the settlor alone a power of revocation of the trusts, upon the exercise of which the trustee was required to return the corpus of the trust to him.

The remaining five trusts, designated in the record as Trusts Nos. 4477, 4478, 4479, 4480 and 4481, referred to here as the "five trusts," were created in 1919 before the passage of the Revenue Act of 1921, but after the enact-

344

ment of the similar provisions of the estate tax of the Revenue Act of 1918. 40 Stat. 1096, 1097. By each, life interests in the income, on terms not now important, were created. In one the life interest was terminable five years after the death of the settlor or on the death of the designated life beneficiary should she survive that date, with a remainder over. In the other four, life interests in the income were created, terminable five years after the settlor's death or on the death of the respective life tenants, whichever should first happen, with remainders over. The settlor reserved to himself power to supervise the reinvestment of trust funds, to require the trustee to execute proxies to his nominee, to vote any shares of stock held by the trustee, to control all leases executed by the trustee, and to appoint successor trustees. With respect to each of these five trusts a power was also reserved " to alter, change or modify the trust," which was to be exercised in the case of four of them by the settlor and the single beneficiary of each trust, acting jointly; and in the case of one of the trusts, by the settlor and a majority of the beneficiaries named, acting jointly.

The settlor died without having revoked either of the two trusts and with the beneficiaries and life tenants designated in the trusts surviving him, and without having modified any of the five trusts except one, and that in a manner not now material.

The commissioner, in fixing the amount of the estate for tax purposes included the corpus of all seven trusts. Section 401 of the statute imposes a tax at a graduated rate " upon the transfer of the net estate of every decedent " dying after the passage of the act. By 402 it is provided that in calculating the tax there shall be included in the gross estate all property, tangible and intangible, "(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contem-

plation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act). . . ."

As to the two trusts, it is argued that since they were created long before the passage of any statute imposing an estate tax the taxing statute if applied to them is unconstitutional and void, because retroactive, within the ruling of *Nichols* v. *Coolidge,* 274 U. S. 531. In that case it was held that the provisions of the similar § 402 of the 1918 Act, 40 Stat. 1097, making it applicable to trusts created before the passage of the act was in conflict with the Fifth Amendment of the federal Constitution and void, as respects transfers completed before any such statute was enacted. But in *Chase National Bank* v. *United States,* decided this day, *ante,* p. 327, the decision is rested on the ground, earlier suggested with respect to the Fourteenth Amendment in *Saltonstall* v. *Saltonstall,* 276 U. S. 260, 271, that a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death. Hence § 402, as applied to the present transfers, is not retroactive, since his death followed the passage of the statute. For that reason, stated more at length in our opinion in *Chase National Bank* v. *United States, supra,* we hold that the tax was rightly imposed on the transfers of the corpus of the two trusts and as to them the judgment of the court of appeals should be reversed.

It is argued by respondent that § 402 by its terms does not impose any tax on the transfers involved in the five trusts and that, even if subject to the provisions of that section, they ante-dated the passage of the 1921 act, and the section as to them is retroactive and void, although they were created after the enactment of the corresponding sections of the 1918 act. The government argues that § 402 applies to all these transfers and is not retroactive

as to them because of the reserved powers to manage and to modify the trusts, which did not terminate until the death of the decedent after the passage of the statute, and that even without such reserved powers the transfers of the remainder interests were all subject to the tax because, within the language of § 402, they were "intended to take effect in possession or enjoyment at or after his death."

As the tax cannot be supported unless the statute applies in one of the two ways suggested by the government, we must necessarily determine the effect of the reserved powers and the meaning and application of the phrase quoted from § 402. If it be assumed that the power to modify the trust was broad enough to authorize disposition of the trust property among new beneficiaries or to revoke the trusts, still it was not one vested in the settlor alone, as were the reserved powers in the case of the two trusts. He could not effect any change in the beneficial interest in the trusts without the consent, in the case of four of the trusts, of the person entitled to that interest, and in the case of one trust without the consent of a majority of those so entitled. Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute.

Nor did the reserved powers of management of the trusts save to decedent any control over the economic benefits or the enjoyment of the property. He would equally have reserved all these powers and others had he made himself the trustee, but the transfer would not for that reason have been incomplete. The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was

made. His power to recall the property and of control over it for his own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift *inter vivos* not subject to the tax.

But the question much pressed upon us remains, whether, the donor having parted both with the possession and his entire beneficial interest in the property when the trust was created, the mere passing of possession or enjoyment of the trust fund from the life tenants to the remaindermen after the testator's death, as directed, and after the enactment of the statute, is included within its taxing provisions. That question, not necessarily involved, was left unanswered in *Shukert* v. *Allen,* 273 U. S. 545. There the gift of a remainder interest, having been made without reference to the donor's death, although it did in fact vest in possession and enjoyment after his death, was held not to be a transfer intended to take effect in possession or enjoyment at or after the donor's death, and for that reason not to be subject to the tax. But here the gift was intended to so take effect, although the transfer which effected it preceded the death of the settlor and was itself not subject to the tax unless made so by the circumstances that the possession or enjoyment passed as indicated.

In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred. Cf. *Y. M. C. A.* v. *Davis,* 264 U. S. 47, 50; *Edwards* v. *Slocum,* 264 U. S. 61, 62; *N. Y. Trust Co.* v. *Eisner,* 256 U. S. 345, 349. It is not a gift tax, and the tax on gifts once imposed by the Revenue Act of 1924, c. 234, 43 Stat. 313, has been repealed, 44 Stat. 126. One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we

are asked to say that this statute means that he may not make a gift *inter vivos*, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute.

It is of significance, although not conclusive, that the only section imposing the tax, § 401, does so on the net estate of decedents, and that the miscellaneous items of property required by § 402 to be brought into the gross estate for the purpose of computing the tax, unless the present remainders be an exception, are either property transferred in contemplation of death or property passing out of the control, possession or enjoyment of the decedent at his death. They are property held by the decedent in joint tenancy or by the entirety, property of another subject to the decedent's power of appointment, and insurance policies effected by the decedent on his own life, payable to his estate or to others at his death. The two sections, read together, indicate no purpose to tax completed gifts made by the donor in his lifetime not in contemplation of death, where he has retained no such control, possession or enjoyment. In the light of the general purpose of the statute and the language of § 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase in § 402 (e) "to take effect in possession or enjoyment at or after his death," include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under § 401. That doubt must be resolved in favor of the taxpayer. *Gould* v. *Gould,* 245 U. S. 151, 153; *United States* v. *Merriam,* 263 U. S. 179, 187. Doubts of the constitutionality of the statute, if construed as contended by the government,

would require us to adopt the construction, at leas$^{}$ reasonably possible here, which would uphold the act. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 407; *United States* v. *Standard Brewery*, 251 U. S. 210, 220; *United States* v. *Jin Fuey Moy*, 241 U. S. 394, 401, 402; *Panama Railroad Co.* v. *Johnson*, 264 U. S. 375, 390. , The judgment below

As to the two trusts, Nos. 1831, 3048—*Reversed.*
As to the five trusts, Nos. 4477, 4478,
4479, 4480, and 4481         —*Affirmed.*