COMMISSIONER OF INTERNAL REVENUE
v. McCORMICK et al.
No. 4211.

Circuit Court of Appeals, Seventh Circuit.
Sept. 20, 1930.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and A. H. Conner, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue; and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Horace Kent Tenney, George T. Rogers, and Henry F. Tenney, all of Chicago, Ill., and Robert N. Miller, of Washington, D. C., for respondents.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

This is an appeal from a determination of the Board of Tax Appeals in regard to an asserted deficiency in estate taxes. The facts are quite free of dispute.

Mrs. Nettie Fowler McCormick died July 5, 1923. Respondents herein are the executors of her estate. On July 27, 1918, decedent executed a trust agreement conveying certain securities to the United States Trust Company of New York as Trustee, under a trust agreement, the material portions of which are herewith set forth.[1]

[1] So long as the said party of the first part shall live the net income of said trust estate shall be accumulated and added to the principal of said trust estate, except so much thereof as shall be required for the following purposes:

(1) If in any year the net income from the property and estate of said first party, retained in her own name and under her own control, after paying all income and other taxes, shall be less than two hundred and fifty thousand dollars ($250,000) said party of the first part shall have the right, within ninety (90) days after the expiration of such year, to request said Trustee to pay over such an amount of the net income of said trust estate as will, when added to her said net income from her property and estate retained within her control, equal the sum of two hundred and fifty thousand dollars ($250,000.00). And said Trustee, upon receiving any such request, shall pay over and deliver to said party of the first part the amount called for by such request. Said Trustee shall have the right to accept the statements contained in any such request, in regard to the amount required to bring the net income of said first party up to the sum of two hundred and fifty thousand dollars ($250,000.00), as true without inquiry or investigation.

(2) Said Trustee shall from time to time in each year pay out of said net income for charitable uses and purposes such sums and amount of money as said first party shall designate and request in writing, specifying to whom the same is to be paid and the particular charitable uses and purposes to which the same is to be applied; and said Trustee shall not be under obligation to see to the application of the moneys so requested to be paid or to investigate the nature or character of the charitable uses and purposes specified in any such request.

From and after the death of the said party of the first part, the net income from said trust estate, as and when received by the Trustee, shall be distributed, paid over, and applied by the Trustee as follows:

(1) One-third (⅓) thereof shall be paid over

The Board found that the transfer was not made in contemplation of death, nor intended to take effect in possession or enjoyment at or after death; that it was not testamentary in character and bore no relation to the privilege taxed, and that the value of the property in the trust at decedent's death should not be included in decedent's gross estate for purposes of the federal estate tax.

The pertinent provisions of the Revenue Act of 1921 (42 Stat. 278) read:

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated  *   *   *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth."

Asserted reasons for including the property covered by this trust within the statute are:

(1) The conveyance in trust was revocable.

(2) Mrs. McCormick's retention of the life use of the estate transferred negatived any alleged intent to transfer the use and enjoyment of the economic benefits before her death.

(3) The transfer of the corpus of the trust was not complete until Mrs. McCormick's death because of the provision in the trust agreement which necessitated the transfer of the trust property to the decedent in case she survived her three children.

The statute called for the imposition of a tax on the corpus of a trust executed in contemplation of death *or* which was "intended to take effect in possession or enjoyment at or after" the settlor's death. Either contingency invoked its levy.

The Board found that the trust was not executed in contemplation of death. There is some evidence tending to support this finding. Petitioner does not challenge its soundness.

■ The attack is therefore centered on the Board's conclusion that the trust was not executed with the intention that it take effect in possession or enjoyment at or after settlor's death. Petitioner's brief was prepared before the decision in May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, was announced. The law as there stated definitely rejected some of the arguments advanced by the government. There remain, however, several questions which arise because of the differences in the provisions of the trust agreement in the May v. Heiner Case and those here under consideration.

In the May Case the trust agreement was clearly irrevocable. Here the provision indicative of irrevocability is more doubtful. While much might be written in an attempt to define, for purposes of taxation, a revocable trust, it is hardly necessary to go into an extended discussion in this opinion. The two broad classifications—revocable and irrevocable—are hardly sufficient to test the application of the statute involved, for trusts may be revocable upon conditions. These conditions may make settlor's power to revoke dependent upon the consent of outside parties whose interests are adverse to

and distributed to each of the following three (3) children of said party of the first part, viz., Cyrus H. McCormick, Anita M. Blaine and Harold F. McCormick, so long as they shall severally live:
(2) From and after the death of either of said three beneficiaries, his or her share of said net income shall be paid over in accordance with any directions in regard thereto contained in his or her last will and testament, and in default of any such directions, then to his or her surviving issue per stirpes, so long as there shall be any such issue surviving; and in default of any such issue, then to the beneficiaries entitled to participate in the balance of said income pro rata.
The trust estate hereby created shall in any and the latest event terminate upon the death of the last survivor of the three children of the said party of the first part, hereinbefore named.

Said first party may terminate said trust, in whole or in part, at any time by the delivery to said Trustee of an instrument in writing, signed by her and by one or more of her three children, hereinbefore named; and after the death of said party of the first part, said trust may be terminated, in whole or in part, at any time by an instrument in writing, signed by a majority in interest of the beneficiaries of lawful age entitled to share in the net income of said trust estate. Any such instrument terminating said trust shall take effect upon its delivery to said Trustee.
Upon the termination of said trust as aforesaid, either in whole or in part, the trust estate as to which said trust shall be so terminated shall be paid over and delivered to said party of the first part, if she shall then be living, and in the event that she shall not then be living shall be paid over and distributed as follows:  *   *   *

those of settlor. Such was the case of Farmers' Loan & Trust Co. v. Bowers (C. C. A.), 29 F.(2d) 14, where the trust agreement provided that the settlor could revoke only in case the trustee consented. Likewise it has been held that a provision of the trust agreement which gave settlor the right to revoke in case the majority of the beneficiaries consent is an irrevocable one. Reinecke v. Northern Trust Company, 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410. Generally speaking, it would seem that a trust agreement is revocable only when the settlor's power is absolute and unconditional.

But we are here dealing with a most practical problem, taxation (Tyler v. U. S., 281 U. S. 497, 50 S. Ct. 356, 359, 74 L. Ed. 991), and the irrevocable character of the trust is not the determinative issue of the controversy, but is important only as it helps illuminate the settlor's intention. So, approaching the question of irrevocability, a case can be easily conceived where a trust agreement might be defined as legally irrevocable, and yet the estate thus conveyed be subject to the federal inheritance tax. To illustrate, A, the settlor, transfers a large sum to B, trustee, for the benefit of C, V, W, X, Y, and Z, reserving the use of the income during the life of A to A. The trust agreement provides that the trust might be revoked by A at any time, provided C, the beneficiary, consents. The beneficiaries other than C are the recipients of the corpus after A's death, save $1 to C. The case becomes stronger if it appears that C was one who occupied an intimate relation to A, such as banker or lawyer. Under such circumstances a court would have little difficulty in finding that the estate was subject to a tax.

In the case before us, Mrs. McCormick reserved or controlled the life use of the fund transferred. She provided for the termination of the trust at any time upon the election of the settlor and the consent of one of the three equal beneficiaries. Notwithstanding the possibility of tax evasion lurking in such an agreement, we are inclined to the view that the trust agreement here under consideration is, so far as the revocable clause is concerned, within the class considered in May v. Heiner. In other words, the condition upon which revocation might take place did not of itself establish an intention to have the trust take effect after settlor's death.

But another clause of the trust agreement supplements this conditionally revocable clause and merits separate consideration. The last paragraph which we have quoted from the trust agreement calls for the payment of the trust estate to settlor in case she survived the beneficiaries. The inferences deducible from such a clause would ordinarily be legal ones, rather than fact conclusions. But the question before us, in view of the statute which makes intention the determinative issue, necessitates a consideration of all the provisions of the trust agreement.

In Tyler v. U. S., supra, the court was dealing with a very different fact situation. But the case merits consideration, and possible application, in so far as it deals with certain principles applicable to the instant case. For example, the following quotation is significant.

"Taxation, as it many times has been said, is eminently practical, and a practical mind, considering results, would have some difficulty in accepting the conclusion that the death of one of the tenants in each of these cases did not have the effect of passing to the survivor substantial rights, in respect of the property, theretofore never enjoyed by such survivor. Before the death of the husband (to take the Tyler Case, No. 428) the wife had the right to possess and use the whole property, but so, also had her husband; she could not dispose of the property except with her husband's concurrence; her rights were hedged about at all points by the equal rights of her husband. At his death, however, and because of it, she, for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. Thus the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other."

That settlor's death was in the instant case, the "generating source" of definite accessions to the three beneficiaries named, cannot be denied. In fact, their enjoyment of the fruits of the trust agreement was not only dependent upon the settlor's death, but this last provision made their estate therein a conditional, if not a contingent, one. But the legal character of the beneficiaries' estates is but one subject of our inquiry. We are in search of all the persuasive facts which help to establish or disprove an intention on settlor's part to create a trust to take effect in "possession or enjoyment at or after her death." The provision now under consideration tends to establish such an intention, if it does not in legal effect conclusively establish it. Instead of resting our conclusion on

the legal effect of this clause, we choose to consider it as one factor to be considered with the others heretofore mentioned.

Further support for the conclusion here reached is to be found in article IV of the trust agreement. This article provides among other things as follows:

"The trustee shall have power and authority at any time and from time to time * * * to sell, transfer and assign any or all of the stocks, bonds, obligations, securities, and other property held at any time by said Trustee under this instrument, and to invest and reinvest the proceeds thereof in accordance with any directions given in writing by the said party of the first part during her life, * * * it being the intention that no change shall be made by said Trustee in the securities or property held in trust hereunder without the written direction or approval of the party of the first part during her life * * * (3) To exercise the voting power upon all shares of stock held by the Trustee hereunder, * * * Provided, however, that upon the written request of the party of the first part during her life * * * it shall be the duty of the Trustee to execute, or cause to be executed, to the person or persons named in said request, a proxy entitling him or them (with full power of substitution) to vote in respect of any shares of stock in such written request or proxy defined or mentioned, at any meeting or meetings of the stockholders of any corporation specified in such request and proxy."

We think this provision is itself some evidence of the settlor's intent to postpone the effective date of the beneficiaries' enjoyment and possession of the corpus of the trust estate until after the settlor's death.

We conclude that the settlor intended that her trust was to take effect in possession and enjoyment at or after her death.

The order of the Board of Tax Appeals is reversed, with direction to proceed further in this matter in accord with the views here expressed.