**TAIT, Collector of Internal Revenue, v. SAFE DEPOSIT & TRUST CO. OF BALTIMORE.**

No. 3758.

Circuit Court of Appeals, Fourth Circuit.
Jan. 8, 1935.

L. W. Post, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and Cornelius Mundy, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for appellant.

H. Vernon Eney and Arthur W. Machen, Jr., both of Baltimore, Md. (Armstrong, Machen & Allen, of Baltimore, Md., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and WATKINS, District Judge.

SOPER, Circuit Judge.

On March 16, 1923, Horace Abbott Cate made a deed of trust of all of his property, except his residence, and the question has arisen whether upon his death which took place June 11, 1926, the property transferred by the deed should have been considered a part of his gross estate for the purpose of computing the federal estate tax under section 302 (c, d) of the revenue act of 1926, 44 Stat. 9, 26 USCA § 1094 (c) and (d). The executor of his estate filed its return for the federal estate tax, and paid under protest the sum of $15,667.40 to the collector of internal revenue, the amount being computed on a gross estate of the value of $807,247.36, and a net estate of $689,129.57, after deducting the sum of $12,180.37 for inheritance taxes paid to the state of Maryland and other taxes of the United States. This suit was brought to recover so much of this amount as should be determined to have been erroneously exacted by the United States, and the claim was made that in determining the property to be included in the gross estate for the purpose of taxation the value of the wife's share, amounting in value to the sum of $598,406.71, should be left out, leaving a balance of $90,722.86 on which, after all deductions were made, the net tax would be $262.89. The amount of the claim therefore was $15,404.51, and for this sum, with interest, a verdict was rendered in the plaintiff's favor in the District Court.

Three questions arose in the course of the trial: (1) Whether the deed of trust was made in contemplation of death; (2) whether the transfer covered by the deed of trust was intended to take effect in possession or enjoyment at or after death; and (3) whether the decedent retained a power to effect a change in the enjoyment of the trust property through the exercise of a power to alter, amend, or revoke, which would render the property taxable. The applicable statutory provisions are set out in the margin.[1]

In determining the first question, it is necessary to consider the terms of the deed,

---

"[1] Sec. 1094. Gross estate; value of. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke. * * *"

the circumstances under which it was made, and the instructions of the District Judge under which the question was submitted to the jury. Under the deed, the legal title to the property covered thereby, and the custody and possession thereof, were immediately transferred to the trustee; the net income was to be paid to the grantor, during his life, and after his death the trustee was to convey one-half of the corpus to the widow of the grantor, if then living, and to hold the remaining half in trust for the children and descendants of the deceased children of the grantor, upon common limitations. If the grantor should die without leaving issue, it was provided that the income of the remaining half of the fund should likewise be paid to the widow, during her life, and that upon her death the principal should be paid to the living nephews and nieces of the grantor, per capita, the children of deceased nephews and nieces to take the share of their parent, per stirpes. In case the wife of the grantor should predecease him, it was provided that three-fourths of the entire trust estate should be held upon the same trusts for his issue, and on failure of issue for nephews and nieces in the shares above described; the remaining one-fourth to be held for the benefit of the stepson of the grantor and to be paid to him when he should arrive at 30 years of age, with contingent remainder to those entitled to the three-fourths share. It was provided that the grantor should have no right to revoke the deed, but should have the right to make certain additions and changes, as provided in the following paragraph: "The said Horace Abbott Cate reserves the right at all times to add to the trust property in his discretion and to change, alter and vary, by paper or papers in writing lodged with said trustee during his lifetime, the provisions of this deed relative to the dispositions of the trust property after his death, but shall have no right to exclude his wife from the benefits hereof or to change or alter the life estate herein reserved by him to himself or to have any portion of the principal paid over or delivered to him or to his estate upon his death, such right being hereby expressly denied."

The right herein reserved to change the trust settlement was not exercised, and the grantor died without issue.

The grantor was 53 years of age at the time of the execution of the deed, and died three years thereafter. His parents were persons of financial means, and as we have seen, the value of his estate was in excess of $800,000. He had never had any business training or experience, but was interested in mechanics, and made use of his mechanical ability in the Great War, during which he served as major in the Ordinance Department of the Army. He was discharged from the Army in April, 1919. He was a large, vigorous man, extremely fond of outdoor life in the northern woods, where he and his wife spent five or six months in each year in a camp in a remote district in Canada, accessible only by canoe and by long portages. Communication with the outside world was difficult, slow, and uncertain.

His parents, particularly his mother, attended to all of his business affairs. She died on January 26, 1921, and his father a year later, and when he was thus for the first time charged with the management of his own affairs, he was oppressed by the responsibility involved. The evidence shows that he was unquestionably influenced by these circumstances to make a transfer of his property in trust to the Safe Deposit & Trust Company of Baltimore, an institution experienced in such matters, so that his affairs might be taken care of during his long absences from civilization. The testimony indicated that his purpose in making the deed was mainly to take care of his business which he felt he was not capable of doing himself, and that he was also moved by a desire to protect his wife by definite provision free from the dangers of debts or incompetent management.

When the deed was executed, he was apparently enjoying his usual health and vigor, was actively engaged in the laborious work of dismantling his old home, and was planning an addition to his camp; and in the following summer, he went to the woods as usual and indulged in the vigorous activity which his life there entailed. During the summer of 1923, after the execution of the deed, he suffered from serious eye trouble and was advised to give up smoking, and to cut down his consumption of intoxicating liquors. His death in June, 1926, was caused by cirrhosis of the liver, a disease which ordinarily progresses slowly and may be in existence for two to four years before death. It was probably induced in this case by the regular use of alcohol in fairly large quantities during a period of forty years.

The government contends that it is reasonable to infer that although the grantor was apparently healthy in March, 1923, he was himself cognizant of a failing condition,

and the eye trouble during the following summer is referred to in this connection. There was, however, no substantial evidence that the making of the deed was influenced by consciousness of approaching death on the part of the grantor. Nevertheless, there were other circumstances surrounding the execution of the deed which led the District Judge to submit to the jury the question as to whether the deed was made in contemplation of death. It covered substantially all of his property, except the family residence, then under contract of sale to the city of Baltimore for the sum of $87,000. Six days after the deed of trust was executed, the decedent made a new will in which he provided that if he should die before receiving the proceeds of the sale of the residence they should be added to the trust property; otherwise it should fall into the residue which was given to his wife for life, and, if not living, then to the trust. It was suggested that this will was merely an auxiliary to the testamentary disposition, which, it was argued, the deed of trust contained.

Upon these salient facts, the District Judge instructed the jury in the words of the Chief Justice in United States v. Wells, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed. 867, that "the test as to whether a paper is made in contemplation of death is to be found in the motive which induced the execution of the paper"; and the jury were told that they should inquire what was the dominant motive that influenced the grantor to make the deed of trust, and that if his dominant motive was associated with ideas of life rather than with the thought of death, then it could not be said that the deed was made in contemplation of death, although the grantor necessarily had the knowledge that some time in the future he would die. Reference was made to the contention of the taxpayer that the grantor was actuated by two motives; (1) that the management of his property might be put into the hands of an experienced trustee, and (2) that his wife should be assured of a half interest in the corpus of the property and a life interest in the other half, if no children survived; and, on the other hand, to the contention of the government that the grantor was dominated by the thought of death, and was arranging his affairs so that they might be taken care of after that event. It was made plain to the jury that if the principal or dominant motive was contemplation of death, then the mere existence of some other motive in a subordinate way would not be controlling;

but if the dominant motive was associated with interests of life, then the fact that the grantor had some contemplation of death was not controlling; or if the dominant motive consisted of a plurality of purposes, all associated with life, it could not be said that the deed was made in contemplation of death. On the following day before the case was submitted to the jury, the District Judge, upon further consideration, instructed the jury that in considering what was the inducing cause of the transfer they should determine what was the "controlling" motive, since the word "controlling" rather than the word "dominant" brought out the idea which he was seeking to convey. Thereupon the attorney for the government stated, so that the jury might not think that he had different views of law from the District Judge, that the thought which the latter had just expressed was the one which the attorney had endeavored to convey on the previous day.

Under these circumstances, we are of the opinion that the jury were not led to find an erroneous verdict by the instructions of the District Judge. It is now recognized that the reference in the statute to contemplation of death "is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. * * * The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." United States v. Wells, 283 U. S. 102, 115, 116, 51 S. Ct. 446, 451, 75 L. Ed. 867. Having in mind the phrase "contemplation of death" in the restricted rather than the general sense, we do not mean to hold that if a grantor is influenced to make a transfer partly by motives induced by contemplation of death, and partly by motives associated with purposes of life, the transfer is not taxable merely because the latter motives are the more powerful. On the contrary, a transfer is taxable in our opinion if the purposes associated with death enter into and form a substantial although a less compelling part of the inducing motives. Apart from the difficulty of appraising the relative value and effect of concurring motives, such a transfer falls within the language of the estate tax act and within the purpose it was designed to meet. Nevertheless, it is clear that there was no reversible error in this respect in the instructions of the District Court, for not only did the attorney for the government express satisfaction with the instructions in their final form at the time of the trial, but the evidence that

the grantor was not moved by the thought of death, as it has been defined, is so clear that the jury could hardly have reached any other conclusion.

■ The second question to be considered is whether the transfer covered by the deed of trust was intended to take effect in possession or enjoyment at or after the death of the grantor. We are concerned only with the value of one-half of the corpus and a life estate in the other half, which was the interest acquired by the wife under the deed; for it is conceded that the power, reserved by the grantor to vary the provisions of the deed relative to the disposition of the remaining interest in the property, was sufficient to make the transfer to this extent one in which the enjoyment thereof was subject to change by the grantor at the date of his death within section 302 (d) of the Revenue Act of 1926 (26 USCA § 1094 (d). See Porter v. Commissioner, 288 U. S. 436, 53 S. Ct. 451, 77 L. Ed. 880; Dort v. Helvering, 63 App. D. C. 98, 69 F.(2d) 836. The meaning of the phrase, whereby transfers "intended to take effect in possession or enjoyment at or after the grantor's death" are described in section 302 (c) of the act (26 USCA § 1094 (c), has been the subject of considerable difference of opinion. The Regulations of the Treasury Department prior to 1931 quite consistently declared that wherever a deed of trust reserves the income to the grantor for life, the transfer should, in all cases, be deemed to take effect in possession or enjoyment at or after his death. This view was not unreasonable, for in the ordinary sense one who is not entitled to the use or the income of property until the happening of a certain contingency does not enter upon its actual possession or enjoyment prior thereto; but this interpretation was shaken by the Supreme Court in Shukert v. Allen, 273 U. S. 545, 47 S. Ct. 461, 71 L. Ed. 764, 49 A. L. R. 855, wherein decisions of the lower courts were reversed, and it was held that a transfer of bonds by a grantor fifty-six years of age in trust to accumulate the income for thirty years, and then to divide the principal and accumulated income among the grantor's children, was not within the statute, because the transfer was immediate and left no interest remaining in the grantor. In Reinecke v. Northern Trust Company, 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397, five trusts were involved, and the principal was not to be distributed to beneficiaries until five years after the death of the settlor. In holding that the trust property should not be included in the gross estate of the decedent under section 402 (c) of the Revenue Acts of 1918 and 1921 (40 Stat. 1097; 42 Stat. 278), the court said, in an opinion by Mr. Justice Stone (278 U. S. at pages 347, 348, 49 S. Ct. 123, 125, 73 L. Ed. 410, 66 A. L. R. 397):

"In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred. * * * One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift inter vivos, equally absolutely and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute. * * *

"In the light of the general purpose of the statute and the language of section 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase in section 402 (c) 'to take effect in possession or enjoyment at or after his death,' include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under section 401. That doubt must be resolved in favor of the taxpayer. * * *"

This language was quoted and held controlling in May v. Heiner, 281 U. S. 238, 243, 244, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244, where the grantor retained a life interest in the income of the trust, subject to a prior life estate in her husband granted by the same instrument; the retention of income was regarded as immaterial because the grantor had irrevocably parted with all other interest in the property by remainders created in the deed of trust, and nothing therefore passed from her to the living upon her death.

In contrast with these holdings it was decided in Klein v. United States, 283 U. S. 231, 51 S. Ct. 398, 75 L. Ed. 996, that lands should be included in the estate of a decedent subject to the tax which, during his life, he had conveyed to his wife to hold during the term of her natural life, and if she should die prior to the grantor, then she

should take no greater estate, and the reversion in fee should remain vested in the grantor; and in the event that she should survive, then, and in that case only, she should take the lands in fee simple. It is clear from these decisions that if the grantor, although reserving a life estate in the property conveyed, gives up all other interest therein, the transfer is considered to take effect in possession and enjoyment immediately, and not at or after death, and this was held to be in conformity with the intent of Congress.

The government now concedes that section 302 (c) of the statute does not apply to gifts inter vivos fully consummated and beyond recall, merely because the gift is one in which the donee does not come into the actual enjoyment of the property until the death of the donor; but it nevertheless contends that the statute applies in all cases in which the gift is incomplete during the life of the donor in the sense that the title to the property does not vest in any other person by virtue of the execution of the grant. And it is said with regard to the present case that the wife's interest prior to her husband's death was purely contingent, since not until then could it be ascertained whether she would survive, and hence his death was the generating source which brought into being new and enlarged property rights for her enjoyment. It is insisted that the case is governed by the decision in Klein v. United States, supra (see, also, Sargent v. White (C. C. A.) 50 F.(2d) 410), because (1) the gifts to the wife were expressly contingent upon her survival; (2) the decedent retained a possible reversion in three-fourths of the corpus if he should die without issue and should outlive his wife, nieces, and nephews and their descendants; and if, in addition, his stepson should die under thirty, the remaining one-fourth would revert to the grantor; and (3) because he also retained complete control of the situation by reserving the right to change the provisions of the trust relative to all the dispositions of the property after the death, except that he could not deprive his wife of the benefits of the trust.

■ It may be admitted that the remainders created for the benefit of Mrs. Cate were contingent in character, in that they were conditioned upon her survival; but that fact does not demonstrate the similarity of this case to Klein v. United States, supra. That decision was based not upon the contingent nature of the gift to the wife, but upon the express reservation of title to the corpus in case of her prior death by the grantor. The material question is not whether there was a vesting of title in a particular grantee, but whether there is a divesting of title by the grantor, or as the thought was expressed by Judge Rose in Curley v. Tait (D. C.) 276 F. 840, 842: "If all beneficial ownership and possession irrevocably passes from the transferror at the time of the transfer, it would seem to be immaterial whether it goes to one person or to several, and, if to several, whether their enjoyment is to be simultaneous or successive, and, if the latter, at what time or upon the happening of what event the rights of one give place to those of another."

■ It was expressly said in Klein v. United States, supra, that the case was not controlled by the niceties of the law of contingent and vested remainders, but by the plain fact that the death of the grantor was the indispensable event which effected the transmission of the estate from the dead to the living. See, also, Corliss v. Bowers, 281 U. S. 376, 378, 50 S. Ct. 336, 74 L. Ed. 916. This view was given substantial effect in three decisions handed down per curiam on the same day, all of which were decided on the authority of May v. Heiner, supra; Burnet v. Northern Trust Co., 283 U. S. 782, 51 S. Ct. 342, 75 L. Ed. 1412; affirming (C. C. A.) 41 F.(2d) 732; Morsman v. Burnet, 283 U. S. 783, 51 S. Ct. 343, 75 L. Ed. 1412, reversing (C. C. A.) 44 F.(2d) 902, and McCormick v. Burnet, 283 U. S. 784, 51 S. Ct. 343, 75 L. Ed. 1413, reversing (C. C. A.) 43 F.(2d) 277. Shortly thereafter the Supreme Court denied the government's application for certiorari in McCaughn v. Carnill, 283 U. S. 825, 51 S. Ct. 350, 75 L. Ed. 1439, Id. (C. C. A.) 43 F.(2d) 69, and Burnet v. Hodgkins, 283 U. S. 825, 51 S. Ct. 350, 75 L. Ed. 1439; Hodgkins v. Com'r (C. C. A.) 44 F.(2d) 43. In all of these cases the deeds reserved the income to the grantor for life, with remainders over after his death, which were contingent in law or contingent in fact. See, also, Wallace v. Commissioner (C. C. A.) 71 F.(2d) 1002, affirming 27 B. T. A. 902; Commissioner v. Johnson (C. C. A.) 51 F.(2d) 1075, affirming 11 B. T. A. 534. These cases justify the conclusion stated by the District Judge in his opinion in this case: "A study of the cases above cited leads to the conclusion that, where the donor parts with all personal interest in the property, except a life estate, and the transfer is not in fact made in contemplation of death, it is not rendered taxable under sub-

section (c) by reason of the nature or quality of the estate taken by the named beneficiaries, whether vested or contingent, subject to be divested, or contingent in law or in fact. Taxing statutes do not concern themselves with the niceties of conveyancing law. Klein v. United States, 283 U. S. 231, 234, 51 S. Ct. 398, 75 L. Ed. 996. Where the donor has reserved nothing for himself or his estate after his death, there is nothing to be transferred by his death that is taxable under this section of the act. Reinecke v. Trust Co., 278 U. S. 339, 348, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397."[2]

■ The government, however, suggests there was not a complete divestment of all possibility of interest in the property by the grantor, because the deed made no provision for the disposition of the property after the grantor's death in case he should leave surviving no issue of his own, no nephews or nieces (of whom there were thirteen when the deed was executed) or descendants of nieces and nephews, and no stepson. Such a possibility was too remote in our opinion to serve as the basis for the imposition of the tax, and certain decisions of the courts support this view. In McCormick v. Burnet, 283 U. S. 784, 51 S. Ct. 343, 75 L. Ed. 1413, Id., 13 B. T. A. 423, the net income was payable to the grantor for life, with provision for accumulation of income over and above a certain sum, and upon death the income was payable to three children for life, with remainder as they should by will appoint, and, in default of appointment, to their issue; and the deed contained an express provision for reconveyance to the grantor in case of survival of the three children, or in case any of them should join in terminating the trust. But the Supreme Court reversed the decision below in (C. C. A.) 43 F.(2d) 277, and held the property was not taxable.

In Com'r v. Wallace (C. C. A.) 71 F.(2d) 1002, affirming 27 B. T. A. 902, the grantor settled property in trust to pay the income to herself for life, and upon her death to transfer the corpus to her daughter absolutely, if the daughter was then living; but that if the daughter should die during the grantor's life, the trust should then determine and the trustee should pay the corpus back to the grantor. It was held that the property was not taxable and the Supreme Court denied

certiorari on October 15, 1934, 55 S. Ct. 117, 79 L. Ed. ——. It is also worthy of note that in Com'r of Internal Revenue v. Duke (C. C. A.) 62 F.(2d) 1057, affirming 23 B. T. A. 1104 (affirmed by a divided court, Helvering v. Duke, 290 U. S. 591, 54 S. Ct. 95, 78 L. Ed. 521), where the grantor made two settlements upon trust for the benefit of his daughter, entitling her to the income of one fund for life and to the principal of the other on attaining the age of thirty, with several contingent remainders over in each instance, it was held that the property was not taxable in spite of the fact that each trust provided for termination and revesting of title in the grantor in the event that the daughter should predecease him. Compare Sargent v. White (C. C. A.) 50 F.(2d) 410; Union Trust Company v. United States (Ct. Cl.) 54 F.(2d) 152.

■ Finally, it is contended by the government that the property should be included in the taxable estate because the grantor reserved the right to change "the provisions of this deed relative to the dispositions of the trust property after his death, but shall have no right to exclude his wife from the benefits hereof." The District Judge held, in our opinion correctly, that the fair import of the provision for the wife is that the grantor did not reserve the power to change the interest given to her. Immediately following that provision, the grantor expressly excludes from the power any right to change the life estate reserved to himself, or to direct that any portion of the principal be paid back to him or to his estate upon his death. The contention is nevertheless made that all of the property held in trust was subject at least to a contingent power in the grantor to alter the ultimate disposition among beneficiaries, in the event that his wife should predecease him; and it is said that for this reason the transfer in trust was both intended to take effect in possession or enjoyment at the grantor's death, under section 302 (c), and was subject at the date of his death to a power to alter or amend, under section 302 (d) of the act.

■ It is true that in Reinecke v. Northern Trust Company, 278 U. S. 339, 345, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397, it was held that trusts subject to a power of revocation in the grantor fall within the provision as to transfers intended to take effect

---

[2] It may be noted that shortly after these decisions, Congress amended section 302 (c) in order to make taxable transfers by a trust where the life estate is reserved by the grantor. Act of March 3, 1931, 46 Stat. 1516, Act of June 6, 1932, § 803 (a), 47 Stat. 279 (26 USCA § 1094 (c).

in possession or enjoyment at or after death. The power of the grantor to reinvest himself with the trust property is brought to an end by his death, and at that moment there is a shifting of economic benefits from the grantor to beneficiaries which constitutes the substantial transfer. Compare Chase Nat. Bank v. United States, 278 U. S. 327, 334, 338, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388; Burnet v. Guggenheim, 288 U. S. 280, 284, 53 S. Ct. 369, 77 L. Ed. 748. But nothing passes from the grantor where, as in the pending case, he has surrendered all right to recall the property either for himself or for the benefit of his estate, Porter v. Commissioner, 288 U. S. 436, 440, 53 S. Ct. 451, 77 L. Ed. 880, and we do not think that the mere cessation at death of a contingent power to change the rights of beneficiaries can bring the transfer within section 302 (c) of the act. See Commissioner v. Johnson (C. C. A.) 51 F.(2d) 1075, affirming 11 B. T. A. 534. In addition, it must be remembered that the Reinecke Case dealt with powers of revocation under section 402 (c) of the Revenue Act of 1921, 42 Stat. 278, which, like prior acts, had no separate provision relating to powers to alter, amend, or revoke. See Revenue Act of 1916, § 202, 39 Stat. 777, 778; Revenue Act of 1918, § 402, 40 Stat. 1097. Subsequently in section 302 (d) of the Revenue Act of 1924, 43 Stat. 304 (26 USCA § 1094 note), Congress saw fit to enact an independent subsection requiring inclusion in the gross estate of property transferred subject to a power to alter, amend, or revoke, and that provision, with modifications not material to the question under discussion, has been continued in subsequent acts. We think that this separate treatment of powers of alteration raises at least strong doubt that Congress intended transfers subject to such powers thereafter to be considered within the purview of section 302 (c). And we must resolve that doubt in favor of the taxpayer. Reinecke v. Northern Trust Co., supra, page 348 of 278 U. S., 49 S. Ct. 123; Burnet v. Guggenheim, supra, page 286 of 288 U. S., 53 S. Ct. 369.

Section 302 (d) requires the inclusion in the taxable estate of property covered by a deed, in which a power to change is reserved, even though the passing of title takes place at the time of the transfer and is not deferred until the grantor's death. The subsection is applicable although the grantor disclaims power to regain the property for himself or for his estate. Porter v. Commissioner, 288 U. S. 436, 443, 444, 53 S. Ct. 451, 77 L. Ed. 880. It is therefore admitted by the taxpayer in the pending case that the remainder interest in one-half of the trust property, the disposition of which was subject to an absolute power of alteration, was properly included in the taxable estate. We cannot agree, however, that the balance of the property, in which the wife of the grantor had been given an interest of which he could not deprive her, must likewise be included in his estate because it was subject during his life to a contingent power to alter or amend, in the event of the wife's prior death. A sufficient answer to the government's contention is furnished by the language of the statute itself, when considered together with the fact that the contingent power expired with the grantor's death. The wife survived, and the power never ripened into an actuality, was never a power which the grantor could have exercised with effect, and it may not, therefore, be said that the enjoyment of this portion of the trust property was "subject at his death to any change through the exercise of a power * * * to alter, amend or revoke."

Affirmed.