## MACKAY et al. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 115.

Circuit Court of Appeals, Second Circuit.
Feb. 7, 1938.

SWAN, Circuit Judge, dissenting.

Montgomery B. Angell, Walter D. Fletcher, and Marvin Lyons, all of New York City, for petitioners.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

This is a petition for review pursuant to sections 1001–1003 of the Revenue Act of 1926, c. 27, 44 Stat. 9, as amended by section 603 of the Revenue Act of 1928, 45 Stat. 873, section 1101 of the Revenue Act of 1932, c. 209, 47 Stat. 169, and section 519 of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. § 641, 642, 644, 645.

On May 14, 1919, the decedent, who died September 4, 1928, created eight trusts, six of which are here involved. All the trusts, except for the designation of the initial life beneficiary, were identical in terms. The life beneficiaries named were nieces, nephews, and grandchildren of the decedent. Each trust provided that the named life beneficiary was to receive the income for life, and, upon his or her death, the trust fund was to be divided by the trustees into as many shares as there were lawful children surviving the named life beneficiary who were in being at the time of the creation of the trust. The net annual income derived from each share was to be paid to each child representing such share during the life of such child. The remainder was disposed of as follows:

"Upon the death of each of said children, the principal of the share or portion of the Trust Fund represented by it shall be and become the property of Clarence H. Mackay, or, if he be not then living, it shall be equally divided among his lawful surviving children (the children of any deceased child of his, however, to take, share and share alike, the share which the parent would have taken had he or she survived) and the Trust, as to that portion of the Trust Fund, shall thereupon cease and determine.

"(f) Should the said [initial life beneficiary] die leaving no lawful children who were in being at the date of this instrument, the principal of the Trust Fund shall, on his death, be and become the property of Clarence H. Mackay or, if he be not then living, it shall be equally divided among his lawful surviving children (the children of any deceased child of his, however, to take, share and share alike, the share or portion which the parent would have taken had he or she survived said [initial life beneficiary] and Clarence H. Mackay, and this Trust shall thereupon immediately cease and determine."

Two of the eight trusts terminated prior to the death of decedent when the respective life beneficiaries died leaving no children. A third terminated after the death of the grantor, on May 24, 1933, when the life beneficiary died leaving no children. In each of these three instances the trust property was transferred to Clarence H. Mackay, the remainderman, in accordance with the terms of the indenture. In each of the three, the life beneficiary had no children in being on May 14, 1919. On the date of the decedent's death, six of the eight trusts were in existence; each of four of which was limited to one life, and each of two of which was limited to three lives; namely, an initial life beneficiary and two secondary life beneficiaries.

Each indenture provided: "This Trust may, during the lifetime of the Grantor, be amended or revoked on the joint consent of the Grantor and the Trustees."

Mackay, remainderman, is one of the three trustees named in each trust and continued as such throughout their existence.

An additional tax has been imposed resulting from the decision of the Board of Tax Appeals that the value of the life estates should be included in the decedent's gross estate while the value of the remainders should be excluded. The appellant seeks a review of the inclusion of the life estates, but the Commissioner does not contest the exclusion of the remainders.

The sole question presented, therefore, is whether the tax imposed by the Board on the life estates is proper under section 302(c) or section 302(d) of the Revenue Act of 1926. Section 302, 44 Stat. 70, 71, provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—(a) To the extent of the interest therein of the decedent at the time of his death; * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death; * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke; * * *

"(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act."

No provision similar to subdivision (d) of section 302 of the Revenue Act of 1926 appeared in the Revenue Act of 1918 in force when these trusts were made. Section 302(c), however, is substantially identical with section 402(c) of the Revenue Act of 1918, 40 Stat. 1097.

Clause (c) relates to "any interest * * * of which the decedent has * * * made a transfer * * * intended to take effect in possession or enjoyment at or after his death." The six trusts considered do not fall within this class. By the creation of the trusts, the grantor had divested herself of all interest and enjoyment in respect of the property transferred, for she had reserved to herself no interest whatever in the property either by way of life estate or reversion. She retained no interest in the trust property which was or could be the subject of testamentary disposition. The trusts alone operated to transfer the title, economic enjoyment, and benefit of the property. The transfers were in no way conditioned upon or related to the death of the grantor. Upon the authority of Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A. L.R. 397, the Board concluded that the value of the life estate should be included in the decedent's gross estate under section 302(c), stating as its reason that "the transfer of these estates was not complete until the death of the settlor." The Board had failed to take notice of the adverse interest of Clarence H. Mackay, one of the trustees, whose consent was required to exercise the power of revocation. His interest was adverse to a change in the life estates as well as to a change in the remainder. He had vested remainders which were to come into possession on the termination of the life estates. The interests of Clarence H. Mackay would be adverse to any change in the trusts which might involve diminution in the value of the remainders. To preserve the value of the remainder interests, he would be expected to object to any change in the life estates which might tend to postpone the enjoyment of the remainders such as the substitution of different lives or the addition of new lives. A change of the life beneficiaries would be of vital concern to the remainderman, since the value of his interest depended upon the tenure of their interest. Any change in measuring the lives which might increase the term of the estates preceding the enjoyment of the remainder would diminish the value of the remainderman's property. Of course, a change might have been made which would increase the value of the remainder such as substituting for the originally designated life tenants others whose expectancy would be less. Clarence H. Mackay's interests would favor such a change, needless to say. But, however that may be, Clarence H. Mackay's interest was adverse to a change of the trusts within the intendment of that doctrine as laid down in the cases. It cannot be doubted that his interest opposed a change of the remainder however the situation with regard to the life estates be considered. The seventh trust in the Reinecke Case, supra, could have been revoked by a majority of the beneficiaries of five trusts which included the seventh trust. Thus revocation of the seventh trust could have been effected without the consent of anyone beneficially interested therein. Nevertheless, the court refused to hold that the seventh trust should be included in the decedent's gross estate on the ground that the right of revocation could be exercised by the grantor only with the consent of a person adversely interested, hence the transfer was complete when made. The court held that to decide otherwise would raise constitutional doubts. The same analysis is applicable to White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80. There revocation was provided for by consent of the three trustees one of whom was the Settlor. Only two of the trustees had any interest in the trust. A

revocation of the trust complete as to every one except the trustee Arthur Sargent who was beneficially interested could have been had without any one being adversely affected whose consent to revocation was required. Nevertheless, the court held that the consent of an adverse interest was there a prerequisite to revocation and refused on that ground to include the trust in the decedent's gross estate. The doctrine of adverse interest to revocation when attempting to apply section 302(d) retroactively as shown by the above cases would not permit us to cut so fine as the Commissioner urges. Thus, while, as we have already pointed out, the interests of Clarence H. Mackay as a remainderman need not have been opposed to any and all changes in the life estate, we think his interests were adverse to change as that doctrine has been applied in the cases up to now.

██ Where the grantor makes a transfer in trust divesting himself of all interest in the property transferred, or has placed the property, for all practical purposes, beyond recall, such transfer is not within the scope of section 302(c). McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413, reversing, 7 Cir., 43 F.2d 277; May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244; Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Shukert v. Allen, 273 U.S. 545, 47 S.Ct. 461, 71 L.Ed. 764, 49 A.L.R. 855.

In May v. Heiner, supra, it was clearly established that the reservation of a contingent life estate in the grantor does not bring the transfer within the scope of the section where the property has been placed beyond recall by the grantor. And neither does the reservation in the grantor of a possibility of reverter cause the trust to be included in his estate. Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S. Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239.

In the Reinecke Case, supra, as to two of the trusts the grantor reserved the income for his life as well as a power of revocation exercisable by himself alone. The court held these transfers were incomplete when made, for the grantor had reserved both the income and a sole and absolute power of revocation. In another set of four trusts the grantor reserved no interest in himself; the income of each was payable to a designated beneficiary for life or until five years after the grantor's death. The grantor reserved the power to amend or re-

voke each trust with the consent of the beneficiary. The transfer was held to be complete when made. Another situation arose with respect to a seventh trust, but that has already been discussed above.

In McCormick v. Burnet, 7 Cir., 43 F. 2d 277, 278, reversed 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413, the grantor created a trust to terminate upon the death of the last survivor of her three children reserving to herself the use of part of the income for her life, with the direction to accumulate the balance, and upon her death to pay the income in equal shares to her three children, with a power in each child to appoint by will one-third of the income. The grantor reserved a possibility of reverter conditioned upon her outliving the last survivor of her three children, and also the power, with the consent of one or more of her three children, to revest the trust property in herself at any time in whole or in part. The Supreme Court held that this was sufficiently complete; and that, where a transfer is made subject to a power of revocation in the grantor, the exercise of which is conditioned upon the grantor's obtaining the consent of one of three beneficiaries, the reservation of such a conditional power does not render the transfer, either in whole or in part, one "intended to take effect in possession or enjoyment at or after his death."

In these cases there were possibilities in varying degrees that the grantor might secure the necessary consent to exercise his power if he so desired, with respect to any and all the interests transferred. However, the possibilities were regarded as too remote to justify the conclusion that the transfers as to any and all of the interests were incomplete.

██ The enactment in 1924 of section 302 (d), 26 U.S.C.A. § 411 note, is an indication that Congress then recognized the limited scope of section 302(c), or, to say the least, doubted that subdivision (c) included cases of this kind. This was pointed out in Tait v. Safe Deposit & Trust Co., 4 Cir., 74 F.2d 851, 858.

██ The Board held that the retroactive application of section 302(d) to the trusts here considered would violate the Fifth Amendment. Subdivision (d) covers the trusts and subdivision (h) makes it retroactive. The question then becomes one of constitutional power. It has been consistently held that an estate tax imposed with respect to any transfer of property made

prior to the enactment of the statute imposing the tax is invalid under the Fifth Amendment as arbitrary and capricious, where the grantor by reason of such transfer left himself without any power to recall or change enjoyment of the property. Untermeyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645; Blodgett v. Holden, 275 U.S. 142, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081.

▮ The courts, while refusing to hold invalid a retroactive tax upon transfers subject to a power exercisable by the grantor alone (Porter v. Com'r, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880), have recognized the distinction between a transfer subject to such a power and one subject to a power exercisable with the consent of a disinterested trustee (Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565). Where a grantor has divested herself of all interest in the property, as here, reserving only a power of recall or change conditioned upon her obtaining the consent of a beneficiary, section 302(d) cannot be retroactively applied. Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; White v. Poor, supra.

In White v. Poor, supra, the settler created a trust in which she reserved one half of the interest to herself for life and ordered distribution of the other half of the income to her three children in equal shares. Upon her death all the income was distributed to the three children, and, upon the death of the last survivor of the grantor and her three children, the trust property was to be distributed among the issue, next of kin, or appointees of the three children, each child having a general power to appoint one-third. The trustees named were the grantor, a disinterested stranger, and one of the grantor's three children. The grantor, by appointing herself trustee, reserved the power to recall the trust property at any time either in whole or in part, as there was a clause in the trust indenture under which the trust could be terminated by the joint action of all the trustees, and upon such termination the property was to be reconveyed to the grantor. The exercise of this power by the grantor was conditioned upon her securing the consent of the other two trustees, one of whom had no interest in the trust and the other of whom was one of the three beneficiaries. This trust was created in 1919 and the grantor died after the enactment of the Revenue Act of 1924, 43 Stat. 253. There, as here, the power of recall reserved by the grantor was conditioned upon the consent of one but not all of the beneficiaries, as well as the consent of a disinterested trustee. The court held that no part of the trust property was includable in the grantor's gross estate, resting the decision on the ground that the resignation and reappointment of the grantor as trustee rendered section 302(d) inapplicable, plus the authority of the Helmholz Case. If section 302(d) were held applicable, the retroactive application of the section would offend the due process clause of the Fifth Amendment. There the interest of the beneficiary whose consent was required was not adverse to diminishing the interest of the other beneficiaries, nevertheless the condition attached to the exercise of the grantor's power, namely, the need of obtaining the consent of the beneficiary, was regarded as substantial enough to render the retroactive application of section 302(d) offensive to the due process clause of the Fifth Amendment. Com'r v. Chase Natl. Bank, 2 Cir., 82 F.2d 157, 158, is distinguishable, for there we pointed out that "the power she reserved was not to change the trust provisions in a trivial way, but went right to the heart of them and gave the decedent a substantial though qualified control over the trust property until her death."

The Board erred in including these life estates as part of the gross estate of the decedent, and the determination is reversed.

·Determination reversed.

SWAN, Circuit Judge (dissenting).

This court has three times held that a retroactive application of section 302(d) of Revenue Act 1926, 44 Stat. 70, does not offend the due process clause, if the settlor had a reasonable opportunity to avoid the tax by relinquishing his reserved power to alter, amend, or revoke the trust without thereby incurring liability to a gift tax. Porter v. Commissioner, 2 Cir., 60 F.2d 673, 675, affirmed on other grounds, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880; Witherbee v. Commissioner, 2 Cir., 70 F.2d 696, 697, certiorari denied, 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678; Commissioner v. Chase Nat. Bank, 2 Cir., 82 F.2d 157, 158, cert. denied, 299 U.S. 552, 57 S.Ct. 15, 81 L.Ed. 407. See, also, Gwinn v. Commissioner, 287 U.S. 224, 228, 53 S.Ct. 157, 158, 77 L.Ed. 270. Until the Supreme Court expresses disap-

proval of this doctrine, I think consistency requires us to adhere to it. In the case at bar the settlor, during more than two years prior to her death, could have relinquished her power to change the trust without subjecting herself to a gift tax by reason of such relinquishment. It is true that relinquishment of the power would have required the consent of the trustees, one of whom was the remainderman, but none of the trustees could have had any interest adverse to such an alteration of the trust; hence the situation is like that in the Witherbee Case. So long as the power was outstanding, the settlor retained substantial control over the life estates; for example, she might have appointed to herself or to another the income of each trust during the life of the person originally named as life beneficiary. This would in no respect have been detrimental to the remainderman, and, in the absence of an adverse interest, it must be assumed that his consent and that of his fellow trustees would have been forthcoming. The termination of such power by the settlor's death passed an economic benefit to the named life beneficiaries. In my opinion, the value of these life estates was properly included in the decedent's gross estate, and the order of the Board should be affirmed.