*1100 OPINION.
Trammell:
This proceeding involves the redetermination of a deficiency in estate tax, and the various issues raised by the pleadings, as amended, will be considered seriatim in the order set out in the preliminary statement above.
Issue (1) raised the question of the correctness of the valuation of the real estate upon which the decedent’s home was situated in Philadelphia, as determined by the respondent. However, the parties subsequently stipulated, and in accordance therewith we have found, that the fair value of this property at the date of decedent’s death was $211,500.
*1101 Issue (2) concerns the correct valuation at decedent’s death of 22,136 shares of stock in the Counties Gas & Electric Company, and of 7,332 shares of stock in the Portsmouth Gas Company. The stock of the former company was included by the petitioners in the estate tax return at a value of $50 per share, while the respondent determined the value to be $71 per share.. The stock of the latter company was valued by the petitioners at $46.66 per share, and by the respondent at $62.50 per share.
The record contains no expert opinion testimony on the values of these stocks, but much evidence was adduced in reference to the earnings, methods of operation and the general conditions affecting the companies, which evidence has been exhaustively analyzed in the briefs of the parties to support their respective contentions. No sale of either stock was made within such reasonable time of the decedent’s death, either before or after, and under conditions similar to those then existing, as to constitute a safe criterion of value at the basic date. It is not believed that a detailed discussion here of various possible analyses of book figures of earnings, assets and the like will serve any useful purpose. From a careful consideration of all the factors established by the record, we have found the fair value of the stocks in question at decedent’s death to be $60 and $50 per share, respectively.
Issues (3) and (4), because of their relation to each other, will be considered together as one issue. Issue (4) involves the question of whether or not certain articles of furniture, paintings and other household effects, which are set out in detail in our findings of fact, of the total value of $14,510, were the property of the decedent at the time of his death and therefore includable in the gross estate. These articles were all purchased by the decedent during his lifetime or with funds furnished by him, and most of them were at his death being used by his three children in their respective bedrooms in his home. The petitioners contend that the articles were the property of the children or of the widow, but the record, we think, not only fails to establish such ownership, but, on the contrary, shows that said articles were the property of the decedent. The only basis for the contention of the petitioners appears to be that because the articles were being used by the children, they had come to regard them as their own. In our opinion, this point is made clear by the will of the decedent, wherein he bequeathed the articles in question to his several children, designating, in a separate memorandum in his own handwriting and signed by him, the specific articles which he desired each child to have, giving to each the articles “ regularly used in his or her bedroom and which have been recognized during my life by my family in that sense as their own.” It is hot shown that this *1102 provision of the will was contested, but apparently distribution of the articles has been or will be made in accordance therewith, thus recognizing the property as belonging to the decedent at his death. It has been stipulated by the parties, and we have so found, that the value of this property at the date of decedent’s death was $14,510, which amount should accordingly be included in the gross estate.
Under issue (3) the question is the fair value at decedent’s death of certain paintings, furniture and personal effects bequeathed by the decedent to his widow for life, with remainder to the Pennsylvania Museum and School of Industrial Art, a charitable institution. These articles were valued by the petitioners in the return at $91,958.50, and the value of the charitable bequest, after deduction of the value of the widow’s life interest, was fixed by them at $49,594.14. The respondent increased the value of the property to $104,418.50, and added thereto other articles, the ownership of which is in dispute under issue (4), of the value of $14,510, making a total value of $118,988.50, which resulted in increasing the deduction for the charitable bequest to $64,111.69. The parties have stipulated, and we have found, that the fair value at decedent’s death of the property bequeathed to the widow, with remainder to the charitable institution, was $99,458.50. To this amount is to be added the stipulated value of the articles involved under issue (4) in the sum of $14,510, and the deduction allowable on account of the charitable bequest will be determined by applying to the aggregate of said two amounts the factor .53931.
Issue (5) involves the action of the respondent in including in the gross estate a portion of the corpus of a trust created by the decedent on December 19, 1922. The parties have stipulated, and we have found, that the fair value of the corpus of said trust at the date of the decedent’s death was $241,861.03. In computing the deficiency, the respondent included a portion of said amount in the gross estate, and in his amended answer alleges that the deficiency so determined should be increased by including in the gross estate the entire value of .the corpus of said trust. The petitioners contend that no part of the value of said corpus should be so included. It is not contended that the trust was created in contemplation of death, and the material provisions of the trust instrument are set forth at length in our findings of fact.
Thus, we have presented here a clear cut issue of law, namely, whether or not the value of property, transferred to trustees by an irrevocable deed, executed by the decedent more than two years prior to his death, such transfer not being made in contemplation of death and a portion of the income being reserved to the settlor during his lifetime, with remainder to the beneficiaries, may be included in *1103 determining the value of the gross estate for purposes of the Federal estate tax.
The decedent died on November 23,1925, and the applicable statute is the Revenue Act of 1924, which provides in pertinent part as follows:
Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—
*******
(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, * * * intended to take effect in possession or enjoyment at or after his death * * *.
The trust deed here in question became effective by its terms when accepted by either of the trustees named therein. It was accepted by one of the trustees on the date of its execution, and, therefore, became effective on said date, but the respondent contends that because the trust instrument provided that the corpus should not come into possession of the trustees until some future undetermined date, it should be construed as intended to take effect in possession or enjoyment at or after the decedent’s death. The respondent further contends that the entire corpus should be included in the decedent’s gross estate also because the decedent retained the right to exercise control, and management through the trustees as his agents. We can not agree that respondent’s conclusions of fact, upon which he predicates his contentions, are correct. If such were the facts, however, we would still be unable to conclude that the corpus of this trust is subject to the tax.
At the date of execution of the trust deed on December 19, 1922, which conveyed to the trustees the entire interest of the decedent in his father’s estate, the corpus of the latter had not been distributed, but was then in the possession of the decedent and his brother as executors of their father’s estate. In paragraph 8 of the trust deed, the decedent expressed the wish that such arrangement “ should not for the present be disturbed,” but provided that the trustees “ should have the right, should they so elect, to demand- at any time that the principal be turned over to them.” In any event, the principal or corpus was actually delivered into the possession of the decedent’s trustees on March 24, 1925, which was prior to his death on November 23, 1925, so that the corpus did not in fact pass to the trustees as an incident of the decedent’s death.
Nor do we think that the trust instrument discloses that the decedent retained the right to manage the trust estate or to control the trustees in any manner. Full discretion and unhampered man *1104 agement were invested in the trustees. But so far as concerns the issue here involved, the question of management and control is immaterial. Likewise, the fact that the decedent reserved to his own use a portion of the income of the trust for the payment of premiums on life insurance policies during his lifetime, with remainder over, is immaterial. All of these points have been fully considered and definitely decided by the Supreme Court of the United States adversely to the respondent’s contentions.
The provisions of the Revenue Act of 1924, hereinabove quoted as controlling in this case, appear in substantially the same form in the Revenue Acts of 1918 and 1921. Reinecke v. Northern Trust Co., 278 U. S. 339, arose under the Revenue Act of 1921, and the “ five trusts ” there involved created life interests in the income (payable to others than the settlor), with remainders over. However, the set-tlor reserved to himself full power to supervise the reinvestment of the trust funds and to appoint successor trustees. The power was also reserved to revoke or modify the trusts by the settlor and beneficiaries, acting jointly. The Court said:
Since the power to revoke or alter was dependent upon the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might enure to his own benefit as if the gift had been absolute. Nor did the reserved powers of management of the trusts save to decedent any control over the economic benefits or the enjoyment of the property. He would equally have reserved all these powers and others had he made himself the trustee, but the transfer would not for that reason have been incomplete. The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for Ms own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift inter vivos not subject to tax.
* * # * * * *
In the light of the general purpose of the statute and the language of section 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase in section 402 (c) “ to take effect in possession or enjoyment at or after his death ”, include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under section 401. That doubt must be resolved in favor of the taxpayer.
The Court has thus specifically disposed of each contention of the respondent made here except the question whether the reservation by the decedent of a portion of the trust income to his own use during his lifetime would render a proportionate part of the trust corpus subject to the tax. This question was definitely decided by the Court, also adversely to the respondent’s contention, in May v. Heiner, 281 U. S. 238. See Estate of Blanche Leiter Block, 20 B. T. A. 782.
*1105 The Circuit Court of Appeals for the Seventh Circuit, in Commissioner v. Northern Trust Co., 41 Fed. (2d) 732, in affirming 9 B. T. A. 96, said:
The conclusion, under this decision (May v. Seiner, supra,) seems inescapable that property conveyed by an irrevocable deed of trust, to third parties, with no reversionary interest, contingent or otherwise, in the settlor, though the income during the settlor’s life be payable to the settlor, does not pass at the settlor’s death, but at the date of the execution and delivery of the deed of trust. Property thus conveyed is therefore not subject to the tax provided for in the section above quoted.
Affirmed by the U. S. Supreme Court, 283 U. S. 782.
On March 3, 1931, Congress, by joint resolution, amended the Revenue Act of 1926 (section 302 (c)) as follows:
(c) To the extent of any interest therein of which the decedent has at any time made a transfer by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or for any period not ending before his death (1) the possession or enjoyment of, or the income from, the property, or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money’s worth.
This amendment, however, does not affect the Revenue Act of 1924, which is applicable to the facts of this case.
On authority of the decisions cited, we hold that no part of the value of the corpus of the trust here involved may be included in determining the value of the decedent’s gross estate.
Issue (6) involves a deduction claimed by the petitioners of the amount of $5,000 paid by them as a claim against the estate on account of a pledge given by the decedent prior to his death-to the Welfare Federation of Philadelphia, a charitable organization in the nature of a community chest. The facts set out in our findings hereinabove bring this issue squarely within our decision in Jephtha H. Wade, Jr., et al., Executors, 21 B. T. A. 339, and on authority of that decision, we hold that the petitioners are entitled to the deduction claimed. While the Wade case arose under the Revenue Act of 1926, the provisions of the statute there quoted are substantially the same as the corresponding provisions of the 1924 Act applicable here.
Issue (7) relates to the credit against the Federal estate tax claimed by the petitioners on account of transfer, estate or inheritance taxes paid to the States of Pennsylvania, Virginia, Maine, and New Jersey in the total amount of $92,670.98. The respondent admitted the right of the petitioners to credit for the taxes paid to Pennsylvania, Virginia, and Maine, but denied credit for the taxes admittedly paid to the State of New Jersey in the amount of $1,852.22, for lack of proof which the record, in our opinion, now supplies. The *1106 petitioners have established. (1) that the amount of the New Jersey tax as claimed has been paid, (2) that it was paid in respect of property included in the gross estate, submitting a detailed list or inventory of the property, and (3) that no claim for a refund of said tax or any part thereof has been filed, and that no such action is contemplated. This is sufficient proof to entitle the petitioners to the credit under section 301 (b) of the Revenue Act of 1924, and, subject to the limitation of 25 per cent provided by said section, the petitioners will be allowed credit in said aggregate amount of $92,670.98.
Issues (8) and (9) involve additional deductions claimed by the petitioners on account of the payment of debts of the decedent and expenses of administration in the total amount of $3,271.92, as detailed in our findings of fact. These deductions are now conceded by the respondent, and will be allowed in recomputing the deficiency herein.
Reviewed by the Board.

Judgment will be entered under Buie 50.