CLARENCE H. MACKAY AND FRANK L. POLK, AS EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF MARIE LOUISE MACKAY, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDET.

Docket No. 59269.   Promulgated December 20, 1935.

*Walter D. Fletcher, Esq.*, for the petitioners.
*Frank T. Horner, Esq.*, for the respondent.

OPINION.

MORRIS: The respondent having determined a deficiency in estate tax of $187,339.50, the petitioners, being the duly appointed and acting executors of the estate of Marie Louise Mackay, deceased, bring this proceeding for the redetermination thereof, alleging error in the following particulars, i. e., the disallowance of certain credits authorized by subdivision (b) of section 301 of the Revenue Act of 1926; upon adjustments made on account of deductions claimed; and the inclusion in the decedent's gross estate of the aggregate value of the corpora of six trust funds created by the decedent during her lifetime.

Marie Louise Mackay died on September 4, 1928, while a resident of the State of New York, leaving a last will and testament, in which, after provision for a relatively small specific bequest, she disposed of all of her personalty and realty and all of the rest, residue and remainder of her property to her son Clarence H. Mackay.

On May 14, 1919, the decedent executed eight indentures of trust in favor of Andrea Colonna di Stigliano, a grandchild; Bianca de Bonvouloir, a grandchild; Edna di Martino, a niece; Inez Telfener, a niece; John Daniel Telfener, a nephew; Jose Telfener, a nephew; Marc Antonio Colonna di Stigliano, a grandchild and Paolo Telfener, a nephew. The pertinent typical provisions thereof follow:

WHEREAS the Grantor desires to divest herself absolutely of all interest in and dominion over certain of her property and to dedicate the same to the uses hereinafter set forth, so as to assure, among other things, an immediate income therefrom for her grandson * * * for * * * life and after * * * death for the lives of * * * lawful children, as is hereinafter more particularly and at large set forth; and

*   *   *   *   *   *   *

Now THEREFORE in consideration of the premises and of One Dollar to the Grantor in hand paid by the Trustees, the receipt whereof is hereby acknowledged, the said MARIE LOUISE MACKAY (the Grantor) has sold, assigned, transferred, set over and delivered, and, by these presents, does hereby sell, assign, transfer, set over and deliver all and singular the property * * * [shares of preferred stock of The Mackay Companies] (and which is hereinafter called THE TRUST FUND) To HAVE and To HOLD the same IN TRUST NEVERTHELESS for the uses and purposes, with the powers and under the conditions hereinafter set forth, namely to wit: * * *

Here follow the powers of the trustees to invest the trust funds, to collect and receive income, to pay the expenses of the administration of the trust, to pay all taxes, to pay the fees and commissions of the trustees, if any there be, and

(d) To pay the net balance of the annual income after deducting the expenses, taxes, commissions, etc. * * * to [grantee] during the term of * * * [his or her] natural life, in such installments as may to the Trustees be convenient, without anticipation and said income shall not be liable for the debts of said * * *.

(e) Upon the death of the said * * * [grantee] the Trust Fund shall be divided by the Trustees into as many equal shares or portions as there be lawful children of * * * [grantee] surviving * * * and who were in being at the date of this instrument (each share or portion being regarded and held as a separate Trust) and the net annual income derived from each of said shares or portions (after deducting its proportionate part of expenses and charges mentioned * * * shall be paid to the child representing it during the life of said child in such installments as the Trustees think best.

Upon the death of each of said children, the principal of the share or portion of the Trust Fund represented by it shall be and become the property of CLARENCE H. MACKAY, or, if he be not then living, it shall be equally divided among his lawful surviving children (the children of any deceased child of his, however, to take, share and share alike, the share which the parent would have taken had he or she survived) and the Trust, as to that portion of the Trust Fund, shall thereupon cease and determine.

(f) Should the said * * * [grantee] die leaving no lawful children who were in being at the date of this instrument, the principal of the Trust Fund shall, on * * * [his or her] death, be and become the property of CLARENCE H. MACKAY or, if he be not then living, it shall be equally divided among his lawful surviving children (the children of any deceased child of his, however, to take, share and share alike, the share or portion which the parent would have taken had he or she survived said * * * [grantee] and CLARENCE H. MACKAY, and this Trust shall thereupon immediately cease and determine.

Then follow provisions for the replacement of trustees in case of death or resignation; provision expressing the intention of the grantor that the trust shall always be administered by three trustees, etc; provision, later amended, respecting the compensation of trustees, if any; provision empowering trustees to sell and dispose of properties or securities of the trust; and provision authorizing investment of the trust funds. It is then provided in article VIII that: " This trust may, during the lifetime of the Grantor, be amended or revoked on the joint consent of the Grantor and the Trustees."

Certain immaterial amendments were made to the various trusts on December 24, 1920, and September 29, 1925, pursuant to the aforesaid provision permitting such amendment. There were no other amendments.

Clarence H. Mackay served as trustee from the date of creation to the termination of the trust in favor of Inez Telfener, Marc Antonio Colonna di Stigliano and Paolo Telfener, and he has continuously served as trustee respecting the remaining five trusts until the present time. The trusts in favor of Andrea Colonna di Stigliano, Bianca de Bonvouloir, Edna di Martino, Inez Telfener, John Daniel Telfener, and Jose Telfener were in full force and effect on the date of the decedent's death.

On May 14, 1919, and September 4, 1928, said Clarence H. Mackay had three lawful children, who are still alive. The following are grandchildren of said Clarence H. Mackay now living. The date of birth of each such grandchild is set opposite his or her name:

| | |
|---|---|
| Marie Louise O'Brien | August 5, 1924 |
| Katherine M. O'Brien | February 21, 1926 |
| Morgan J. O'Brien III | May 4, 1929 |
| Mary Ellin Berlin | November 25, 1926 |
| Linda Louise Berlin | February 23, 1931 |
| Michael Mackay | April 3, 1931 |

On May 1, 1921, the said Marc Antonio Colonna di Stigliano died, unmarried and without issue, and under the terms of said trust the corpus was transferred to the said Clarence H. Mackay. On February 8, 1924, said Paolo Telfener died, leaving him surviving no lawful issue, and under the terms of said trust the corpus was transferred to the said Clarence H. Mackay. On May 24, 1933, said Inez Telfener died, leaving her surviving no lawful issue, and under the terms of said trust the corpus was transferred to the said Clarence H. Mackay.

On May 14, 1919, Andrea Colonna di Stigliano, Inez Telfener, and John Daniel Telfener were unmarried and without lawful issue, and Bianca de Bonvouloir had no lawful issue. On said date Edna di Martino and Jose Telfener were both married and each had two lawful children, the children of the former being James di Martino and Gino di Martino, and of the latter Jose H. Telfener and Muriel Telfener.

In addition to the foregoing the parties have stipulated the following:

11. In determining the deficiency the value of the corpus of only six of the trusts was included in the gross estate, viz., Exhibit " B " through Exhibit " G ". The value on the date of decedent's death of the corpus of each of said six trusts as found by the Commissioner was as follows:

| Exhibit | Value of Corpus September 4, 1928 |
|---|---|
| B | $327,574.80 |
| C | 327,574.80 |
| D | 151,200.00 |
| E | 151,200.00 |
| F | 100,774.80 |
| G | 100,774.80 |
| | $1,159,099.20 |

The Commissioner, in determining the values of the corpus of the trusts, made no allowance for the payment out of such corpus of Federal or State estate or inheritance taxes.

12. The dates of birth of the life tenants of each of the said six trusts are as follows:

| Exhibit | Life Tenant | Date of Birth |
|---|---|---|
| B | Andrea Colonna di Stigliano | December 14, 1885 |
| C | Bianca de Bonvouloir | March 27, 1887 |
| D | Edna di Martino | January 22, 1880 |
| | James di Martino (child) | July 10, 1904 |
| | Gino di Martino (child) | December 21, 1905 |
| E | Inez Telfener | March 5, 1882 |
| F | John Daniel Telfener | November 26, 1892 |
| G | Jose Telfener | January 6, 1884 |
| | Jose H. Telfener (child) | December 23, 1914 |
| | Muriel Telfener (child) | August 19, 1916 |

13. The values of the life estates on September 4, 1928, in each of the said six trusts, subject to paragraph hereof No. 14 were as follows:

| Exhibit | Value |
|---|---|
| B | $188,336.61 |
| C | 194,723.80 |
| D | 119,362.51 |
| E | 82,189.78 |
| F | 64,284.41 |
| G | 84,895.32 |

14. In the event the Board should hold that any portion of the trusts involved herein (as distinguished from the whole thereof) is not subject to tax then, and in that event, the value of the portion to be eliminated from the gross estate will be settled by agreement under the Rule 50 Settlement of this case.

15. The transfers accomplished by the decedent in the creation of the aforesaid trusts were not transfers made by the decedent in contemplation of death.

16. Such deductions, if any, to which the estate of this decedent may be entitled for administration expenses, including attorneys' fees, executors' commissions and miscellaneous administration expenses, will be settled by agreement between the parties in the settlement of this case under Rule 50.

The stipulation entered into between the parties reduces the issues pleaded to one, pertaining to the inclusion of the value of the corpora of six of the trusts set forth in our findings above in the gross estate of the decedent.

It is the contention of the respondent that the retention of the right of amendment or revocation by the decedent, jointly with the trustees, notwithstanding one of whom was named as the remainderman of the several trusts, subjects the corpora thereof to estate tax under the provisions of section 302 (d) of the Revenue Act of 1926, set forth below, and that such should have been included in the gross estate of the decedent.

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was

subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. The relinquishment of any such power, not admitted or shown to have been in contemplation of the decedent's death, made within two years prior to his death but after the enactment of this Act without such a consideration and affecting the interest or interests (whether arising from one or more transfers or the creation of one or more trusts) of any one beneficiary of a value or aggregate value, at the time of such death, in excess of $5,000, then, to the extent of such excess, such relinquishment or relinquishments shall be deemed and held to have been made in contemplation of death within the meaning of this title: * * *

The parties have stipulated that the trusts in controversy were not transfers in contemplation of death.

The respondent insists here, as he did in *David J. Lit et al., Executors*, 28 B. T. A. 853; affd., 72 Fed. (2d) 551, upon a literal interpretation of the foregoing provisions of section 302 (d) of the statute. That is, he insists that the words " any person " include even a beneficiary and that notwithstanding revocation of these trusts could only be accomplished by the joint consent of the settlor and the trustees—one of whom, Clarence H. Mackay, was the remainderman—the trusts were, in effect, revocable within the meaning of said provisions and that, therefore, the values of their corpora should be included in the decedent's gross estate as having passed from her upon death.

In *David J. Lit et al., Executors, supra*, an indenture of trust was entered into on December 30, 1927, between Sam Lit, decedentsettlor, and his brother, Jacob Lit, as trustee, in which a trust in certain shares of capital stock was created, the dividends from which were payable to the wife of the settlor, Rose L. Lit, for her life and upon her death to the settlor for his life. It was directed that upon the death of the survivor of the two the trustee should transfer the corpus of the trust to the son of the settlor, if living, or as directed in his last will and testament, if he be dead. Revocation and amendment of the trust were provided for therein by the joint action of the settlor and his wife, the life tenant. We there held that the value of the life estate vested in the wife of the settlor and consequently should not be included as a part of the decedent's gross estate because the trust conveyance was irrevocable, as to her, except with her consent. It was further held, however, that the value of the son's remainder interest was includable in the decedent's gross estate since, as to him, the trust was revocable under section 302 (d) of the Revenue Act of 1926, his consent to revocation not being required.

In one of the several controverted trusts in *Louis C. Raegner, Jr., et al., Executors*, 29 B. T. A. 1243, the decedent conveyed a life estate to his son, granting to him a general power of appointment over the remainder interest therein, the settlor reserving the right and privilege of terminating and revoking the trust with the consent in writing of his said son. The Board there held, following *David J. Lit et al., Executors, supra*, that the value of the life interest should be excluded from the gross estate of the decedent. It also held that the decedent's son having a power of appointment over the remainder was an "adverse interest" in respect to such remainder and that the trust, as to it, was also irrevocable, hence the value thereof should not be included in the decedent's gross estate under section 302 (d) of the Revenue Act of 1926. In so deciding, the Board said:

\* \* \* The decedent could not alter, amend or revoke this trust except "upon obtaining the consent in writing of the Settlor's said son", the life beneficiary. To the extent of the life estate, at least, the decedent's son was an adverse interest, and under such circumstances, the value of the life estate is no part of the decedent's gross estate. *David J. Lit et al., Executors*, 28 B. T. A. 853; *Edna T. Stevens et al., Executors*, 29 B. T. A. 641.

It remains to be determined whether the remainder interest in the trust dated December 9, 1925, was revocable and, consequently, includable in decedent's gross estate. In the *Lit* case we held that the remainder interest in the trust there involved was revocable without securing the consent of an adverse interest and should be included in the grantor's gross estate. The only difference in fact between the trust involved in the instant proceeding and the trust involved in the *Lit* case is that Rose L. Lit had only a life estate in the income of the trust, whereas the grantor's son, in the instant proceeding, had not only a life estate in the income of the trust, but was granted a general power of appointment of the remainder. The question now before us is whether this difference in fact between the two cases requires a different answer in deciding whether such remainder interest is includable in decedent's gross estate under section 302 (d) quoted above. In deciding the *Lit* case we held that since Congress, in separate Committee reports of the House and Senate, stated "This provision [sec. 302 (d)] is in accord with the principle of section 219 (g) of the bill which taxes to the grantor the income of a revocable trust", the two sections should be read together; and that the term "any person" in section 302 (d) should be interpreted as meaning "any person not a beneficiary of the trust. \* \* \*" Under that interpretation we held that since Rose L. Lit was a beneficiary to the extent that she was granted a life estate in the income of the trust, the life estate should not be included in the grantor's gross estate; and that since she was not a beneficiary as to the remainder, she was not an adverse interest as to it and the remainder interest was revocable by the grantor "in conjunction with any person not a beneficiary" and, therefore, includable in the grantor's gross estate.

The income from the trust dated December 9, 1925, was to be paid to decedent's son for life and upon his death "to such person or persons and in such shares and lawful estates as the said son LOUIS C. RAEGNER, JR. may nominate

and appoint by his last will and testament, or other written instrument," with other provisions in case of default.

Did decedent's son have an adverse interest as to the remainder? The son was one of the trustees of the trust. But, as held in *Reinecke* v. *Smith*, 289 U. S. 172, "A trustee is not subsumed under the designation beneficiary." In *Smith* v. *Commissioner*, 59 Fed. (2d) 56, the United States Circuit Court of Appeals, First Circuit, said:

> It would seem that Congress did not intend, by the use of the term "beneficiary" in section 219 (g) only a beneficiary having a present vested interest, but intended to include within that term a beneficiary or beneficiaries having contingent interests as well as those having present or vested ones.
>
> Undoubtedly Congress could have drawn a line between beneficiaries holding vested and contingent interests, or between those having contingent interests based on their respective degrees of remoteness, but it has done neither of these things. It is therefore far more reasonable to conclude that by the word "beneficiary" Congress intended to include persons or classes of persons designated, in the particular trust under consideration, entitled to take present or contingent interests thereunder.

See also *Bessie R. Jones*, 27 B. T. A. 171; *Iola Wise Stetson*, 27 B. T. A. 173.

In view of these decisions we must enlarge our inquiry and ask whether the son was an adverse interest within the meaning of the law, as to the remainder. It is clear that if the son had exercised the general power of appointment granted him by his father in the trust indenture and had died, the corpus of the trust would have been included as a part of the son's estate. See section 302 (f), Revenue Act of 1926; also *J. Gilmore Fletcher, Executor*, 29 B. T. A. 503.

We think it is clear, therefore, that one who has been granted a general power of appointment over the corpus of the trust property has an adverse interest in such property from that of the settlor of the trust and, where his consent must be secured before the settlor can revoke the trust, such trust instrument is irrevocable within the meaning of the authorities which we have already cited and discussed.

We similarly held in *City Bank Farmers Trust Co., Trustee*, 29 B. T. A. 1141, that is, that property conveyed in trust should not be included in the gross estate under section 302 (d), *supra*, where revocation was possible only with the consent of a beneficiary. The Board was affirmed by the Circuit Court of Appeals at 74 Fed. (2d) 242. The Supreme Court handed down its decision November 11, 1935 (*Helvering* v. *City Bank Farmers Trust Co., Trustee*, 296 U. S. 85), reversing the judgment of the Circuit Court, saying:

> The respondent says that the section ought to be construed in the light of the analogous Section 219 (g). The latter, part of the income tax title, is "Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor." The two sections have a cognate purpose but they exhibit marked differences of substance. The one speaks of a power to be exercised with one not a beneficiary; the other of a power to be exercised with any person. The one refers to a power to revest the corpus

in the donor; the other has no such limitation. It is true, the Report of the Ways and Means Committee on Section 302 (d) said "this provision is in accord with the principle of Section 219 (g) of the bill which taxes to the grantor the income of a revocable trust." But to credit the assertion that the difference in phraseology is without significance and in both sections Congress meant to express the same thought, would be to disregard the clear intent of the phrase "any person" employed in Section 302 (d). We are not at liberty to construe language so plain as to need no construction, or to refer to Committee reports where there can be no doubt of the meaning of the words used. The section applies to this transfer.

The decedent here conveyed various blocks of preferred stock, in trust, under indentures directing the payment of the income therefrom to her grandchildren, nieces, and nephews for life and upon their death to the children of such grandchildren, nieces, and nephews as were in being at the date of the trust instrument, the principal of each of such trusts to be distributed to Clarence H. Mackay, one of the trustees under each instrument, upon the death of each of said children. Each of the trusts was revocable by the grantor with the joint consent of the trustees.

Although Clarence H. Mackay, one of the trustees, was also the remainder under each trust, the trusts were nevertheless revocable within the meaning of section 302 (d), *supra*, as construed by the Supreme Court in *Helvering* v. *City Bank Farmers Trust Co.*, *Trustee*, *supra*.

But the trust in *Helvering* v. *City Bank Farmers Trust Co.*, *Trustee*, *supra*, was established in 1930, subsequent to the enactment of the Revenue Act of 1924, which, as the Court there remarked, was the act in which section 302 (d) was first introduced, consequently, as the Court further observed, the creator was "upon notice of the law's command." Had that trust not been created subsequent, rather than prior, to the enactment of the Revenue Act of 1924, a different conclusion would clearly have been reached upon the principle of *Nichols* v. *Coolidge*, 274 U. S. 531. After emphasizing the fact that the trust there was created subsequent to the enactment of the controlling provisions, the Court said:

In view of the evident purpose of Congress we find nothing unreasonable or arbitrary in the provisions of Section 302 (d) of the Revenue Act of 1926 as applied in the circumstances of this case. It was appropriate for Congress to prescribe that if, subsequent to the passage of that Act, the creator of a trust estate saw fit to reserve to himself jointly with any other person the power of revocation or alteration, the transaction should be deemed to be testamentary in character, that is, treated for the purposes of the law as intended to take effect in possession or enjoyment at the death of the settlor.

The trusts in the instant case were created in 1919, consequently the creator thereof had no "notice of the law's command." Therefore the value of the corpora of the trusts may not be included in the decedent's gross estate under section 302 (d) under the well settled

principle of *Nichols* v. *Coolidge, supra.* See also *Helvering* v. *Helmholz,* 296 U. S. 93.

An entirely different situation exists, however, with respect to the inclusion of the value of the life estates under section 302 (c), which provides that the value of the decedent's gross estate shall include the value of all property to the extent of any interest therein of which he has at any time created a trust intended to take effect in possession or enjoyment at or after his death. In *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339, the Supreme Court, in construing a like provision in the Revenue Act of 1921, held that as to two of the trusts therein considered, although created long before the passage of any statute imposing an estate tax, which is not the fact in the instant proceeding, the value of the corpus should be included in the gross estate. As to these trusts the settlor reserved a power of revocation. A transfer made subject to such a power in the transferor is not complete until his death. The Court then discussed the five trusts in which the power to revoke was in the settlor and beneficiaries. It held:

Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute.

It concluded that the value of the corpora of the five trusts was not subject to tax.

In the instant proceeding the power to revoke was in! the settlor and trustees, none of whom held a life estate. Therefore as to the life estates there was no adverse interest whose consent was required before revocation. The transfer of these estates was not complete until the death of the settlor. *Reinecke* v. *Northern Trust Co., supra.* The value of the life estates should therefore be included in the decedent's gross estate.

The other error or errors complained of should be adjusted according to the stipulation of the parties.

*Judgment will be entered under Rule 50.*