EMPIRE TRUST COMPANY, LEVIS A. HAMILTON, ALEXANDER HAMILTON, EXECUTORS OF LEVIS C. HAMILTON, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78539. Promulgated April 14, 1937.

*Albert F. Hillix, Esq.,* and *John M. Miller, Esq.,* for the petitioners.
*Clay C. Holmes, Esq.,* and *Ed L. Weber, Esq.,* for the respondent.

OPINION.

ARNOLD: Respondent determined a deficiency in estate tax of $3,892.88 against the decedent, who died April 27, 1931. It is alleged that the Commissioner erred in denying as a deduction from the gross estate an amount of $50,000 paid to decedent's widow under an antenuptial agreement between her and her husband. The case was presented on stipulation and evidence. The facts are not in controversy.

The petitioners are the duly appointed, qualified, and acting executors of the estate of Levis C. Hamilton, deceased, who died testate and whose last will and testament and the codicils thereto were duly admitted to probate in the Supreme Court of the District of Columbia, holding probate court, on the 14th of May 1931.

On September 30, 1924, the decedent, Levis C. Hamilton, then a resident of the District of Columbia, entered into a contract in the District of Columbia with Katherine W. Bonnie, which contract is as follows:

THIS CONTRACT AND AGREEMENT made in contemplation of marriage entered into on this thirtieth day of September, 1924, by and between L. C. Hamilton of Washington, District of Columbia and Katherine W. Bonnie of Louisville, Kentucky, witnesseth:

THAT WHEREAS a marriage is intended and desired to be solemnized between the parties hereto, and

WHEREAS each of said parties is now possessed in their own right of a considerable estate which they mutually desire to retain manage or dispose of separately by gift, will or otherwise, and to the same extent as if they each remained single, and as to which said estates they mutually desire to contract with each other prior to their said marriage;

NOW THEREFORE IT IS AGREED by and between the parties hereto in consideration of the marriage to be solemnized between them and in consideration of the further agreements herein after set out, and the mutual understanding and undertakings herein made as follows:

That each of the parties hereto shall retain the title, management and control of the estates now owned by them, whether real, personal or mixed, and all increase or addition thereto entirely free and unmolested by the other party and may encumber, sell, dispose, give or provide by will for the disposition of, any or all of said estates so separately owned and possessed; that at the death of either, no claim by inheritance, descent, dower or curtesy, or maintenance shall be made by either of the parties hereto against the other, or against the estate of the other; that each of the parties hereto do separately waive any and all rights by dower, curtesy, or by any statute given by virtue of marriage in and to any part or parcel of the estate now owned and possessed by the other, and do hereby agree and consent that each shall have full power and control in all respects to exercise free and undisturbed ownership, management and disposition of the estates and increases thereto now owned and possessed by said parties, and each of said parties does waive and renounce any legal and statutory rights that might by any law be alleged and set up against any part or parcel of the estate of the other and does consent that the estate of each shall descend or be disposed of by will to the heirs or legatees or devisees of each of said parties free and clear of any claim by inheritance, dower, curtesy, maintenance or any claim otherwise given by law to a husband and wife.

It is further agreed that if the party of the second part should survive party of the first part, that in the event the sum of Fifty Thousand ($50,000) Dollars shall be paid to said second party in further complete extinguishment of all and any claims given by law and which have been in this instrument expressly waived and renounced.

IN WITNESS WHEREOF the parties hereto have this 30th day of September, 1924, signed and sealed this instrument in duplicate and before witnesses.

.  L. C. HAMILTON
*Party of First Part*
.  KATHERINE W. BONNIE
*Party of Second Part*

Witnesses:
KATHLEEN W. NOEL
WALTER F. LONG

Shortly thereafter, on November 18, 1924, the parties to the contract were married and continued to be man and wife until the death of Hamilton, which occurred in the District of Columbia on April 27, 1931.

At the time the antenuptial contract was made and at the time of his death, decedent was possessed of personal property valued at approximately $1,000,000, and Katherine W. Bonnie was possessed of an estate of a very substantial amount. At the date of making the contract Levis C. Hamilton was 67 years of age and Katherine W. Bonnie was approximately 57. Hamilton had not been married previously. He left no children or descendents of a deceased child nor father, mother, brother, or sister, but did leave surviving him two nieces and five nephews. Katherine W. Bonnie had previously married and was a widow at the time of her marriage to Hamilton.

Paragraph 3 of decedent's will is as follows:

3. I give and bequeath to my beloved wife, Katherine W. Hamilton, the sum of Fifty Thousand and no/100 Dollars ($50,000.00) in cash, said sum being the amount specified in a certain written antenuptial agreement.

By paragraph 4 of the will the testator gave and bequeathed to the Empire Trust Co. of St. Joseph, Missouri, as trustee, $300,000 at par of the nontaxable securities belonging to his estate, in trust for his wife so long as she should live, the securities to be set aside before specifying any other bequests contained in the will and the income therefrom to be paid quarterly to the widow. Upon her death the trust was to cease and the securities held in trust at that time were to be distributed in specified amounts to 12 named beneficiaries. Other bequests were made to other beneficiaries and one-half of the residuary estate was bequeathed to Alexander Hamilton and one-half to Levis A. Hamilton, nephews of the testator.

A day or two after the decedent's death W. F. Enright, president of the Empire Trust Co. and one of the executors and trustees under the will, had a conversation with Mrs. Hamilton relative to her claim. At that time Mrs. Hamilton produced the original antenuptial agreement for his inspection and inquired if there was any procedure which she would be required to take concerning it. Mrs. Hamilton had made a demand of one Schooley, attorney for the estate, for the payment of the $50,000 provided in the agreement, and Schooley advised Enright of this fact.

Enright discussed the matter with his coexecutors and they concluded that the agreement was a valid claim against the estate and should be paid. Mrs. Hamilton was informed by Enright that he felt confident the executors intended to pay the claim and there was no necessity for her to file a claim. The estate did not have enough money in cash to pay the $50,000 and Enright discussed the matter with Mrs. Hamilton and explained to her that in order to meet the

obligation the executors would have to sell securities at a considerable discount. Thereupon Mrs. Hamilton agreed to waive payment for a period of at least a year, provided she was paid one year's interest at that time on the $50,000. Enright secured the approval of this plan of the heirs and coexecutors and Mrs. Hamilton was paid $3,000 as interest on the $50,000 which she claimed under her contract, and she executed the following receipt:

I, Katherine W. Hamilton, widow of the late Levis C. Hamilton, do hereby acknowledge to have received the sum of Three Thousand Dollars ($3,000.00) from the Executors of the Estate of Levis C. Hamilton, deceased, the same being a voluntary advance of interest on Fifty thousand dollars antenuptial contract at the rate of six per centum from April 27, 1931 to April 27, 1932.

In accepting this sum, I hereby release the executors of the Estate of Levis C. Hamilton, from any further payments until April 27, 1932.

At the expiration of the year Mrs. Hamilton was paid $50,000 from the assets of the estate by the delivery to her of $33,500 in cash and 150 shares of Potomac Electric Power Co. preferred stock at the agreed market value of $110 per share, totaling $16,500, and a receipt prepared by the attorney for the estate was signed by her. The receipt signed was as follows:

I, the undersigned, Katherine W. Hamilton, of the District of Columbia hereby acknowledge to have received from the Empire Trust Company, Levis A. Hamilton and Alexander Hamilton, Executors of the estate of Levis C. Hamilton, deceased, No. 41,958, the sum of Fifty-thousand dollars ($50,000.00) under paragraph 3 of the will of Levis C. Hamilton, which is in full payment of a certain written antenuptial agreement.

In testimony whereof I have hereunto signed my name and affixed my seal this 17th day of May A. D. 1932.

[Signed]   KATHERINE W. HAMILTON

Witness:
. A. J. UPTON

The $50,000 was paid by the executors as set out above without a formal order of the Supreme Court of the District of Columbia acting as probate court. All other debts and claims against the estate were paid in like manner, the executors relying upon the approval of the payment by the court when the final settlement should be made. The receipt was drawn by the attorney in the particular way in order to evidence the fact that the executors had paid the $50,000 in conformity with the antenuptial agreement and paragraph 3 of the will.

The executors filed a report in the court showing how they had disbursed the moneys of the estate, which report was approved by the court. The report notes payment of the $50,000 as follows:

Said balance partially distributed in accordance with the provisions of the last will and testament of Levis C. Hamilton, deceased, as follows: * * * Mrs. Katherine W. Hamilton, par. 3, I give and bequeath unto my beloved wife the sum of $50,000.00 in cash, said sum being the amount specified in a certain written antenuptial agreement, $50,000.00.

The petitioners contend that the payment by the executors to Mrs. Hamilton was in satisfaction of her claim against the estate under the antenuptial contract based upon the consideration of marriage and is deductible as a claim against the estate contracted in good faith for an adequate and full consideration in "money or money's worth."

The respondent denied the deduction on the ground that the consideration of marriage and the relinquishment of dower and other marital rights in her husband's property was not to any extent a consideration in "money or money's worth" within the meaning of section 303 (a) (1) of the Revenue Act of 1926, and in this connection calls our attention to section 804 of the Revenue Act of 1932.

The applicable portion of the statute is set out in the margin.[1] We think it is clear that the purpose of the Revenue Act of 1926 was to include in the gross estate of the decedent the value of all property at the time of death which passed from the dead to the living to the extent of any interest which the decedent had therein. In *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, the Supreme Court said: "In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred." In *Crooks* v. *Loose*, 36 Fed. (2d) 571, the court said:

Second, the Federal Estate Tax Law is not concerned primarily with the character of the interest or estate acquired by the beneficiary, or its subsequent status; but the law is primarily concerned with the ceasing of the interest of the decedent in the property, with the "shifting of economic benefits" of property from the decedent. If there is such a ceasing of the interest of the decedent, such a "shifting of economic benefits," the federal estate tax comes into play.

In the instant case if there had been no antenuptial agreement and the widow had taken under decedent's will there would have

---

[1](Revenue Act of 1926.)

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy;

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

SEC. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth * * *.

been a transfer and the value of the interest taken would have been included in the gross estate, *United States* v. *Dietz*, 33 Fed. (2d) 576; *Jacobs* v. *Commissioner*, 34 Fed. (2d) 233.

If there had been no antenuptial agreement and the decedent had died intestate there would have been a "transfer" and the value of the dower rights or statutory interests taken by the decedent's widow would have been included in the gross estate. *Allen* v. *Henggeler*, 32 Fed. (2d) 69.

The antenuptial agreement provided that, in consideration of marriage and further agreements, the parties would retain the title management and control their respective estate and mutually waive all rights by dower, curtesy, or by any statute given by virtue of the marriage and:

It is further agreed that if the party of the second part should survive party of the first part, that in the event the sum of Fifty Thousand ($50,000) Dollars shall be paid to said second party in further complete extinguishment of all and any claims given by law and which have been in this instrument expressly waived and renounced.

It is clear therefore that the death of L. C. Hamilton was a condition precedent to the vesting in Mrs. Hamilton of the right to receive the $50,000 "in further complete extinguishment of all and any claims given by law and which have been in this instrument expressly waived and renounced." The $50,000 was the property of Hamilton at the time he died, and the right of his wife therein did not accrue or become consummate either under the agreement or by virtue of any statute until he died. At the moment of death it passed from the decedent to his estate and at the same instant it was acted upon by the agreement and his executors became bound to pay it to his widow. But simultaneously with the transfer the Federal estate tax accrued upon the transfer of the property from the dead to the living, cf. *Knowlton* v. *Moore*, 178 U. S. 41; *Reinecke* v. *Northern Trust Co.*, *supra*, and became a lien upon the estate. It makes no difference, therefore, whether we consider the widow as taking as a beneficiary under the will, or as a purchaser for full and adequate consideration by the use of her statutory marital interest which was transferred from the decedent, the amount paid her by the executors is subject to the estate tax, cf. *Crooks* v. *Loose*, *supra*, and must be included in the gross estate. To hold otherwise would, we think, allow any spouse to nullify the plain intendment of the law by entering into an agreement whereby his wife would receive, after his death, an amount in lieu of dower or the marital interest provided by statute. Clearly section 302 (b) intended to include such statutory interests in the gross estate and we think an amount paid in lieu of such interests must also be included.

Nor do we think the $50,000 is deductible from the gross estate under section 303 (a) (1) of the Revenue Act of 1926. As indicated above, the statute specifically includes in the gross estate any interest of the surviving spouse existing as dower, curtesy, or by virtue of a statute creating an estate in law of dower or curtesy. We do not think it is open to a construction that would permit an evasion of the clear intention of Congress, by the simple means of creating an estate by contract, in lieu of the statutory marital estate of the surviving spouse and asserting the amount thereof as a claim against the estate of the decedent. This construction is evidenced by section 804 of the Revenue Act of 1932, which amended section 303 (d) of the Revenue Act of 1926 by adding at the end thereof a new sentence which is declaratory of what the law was.[2] Section 804 reads in part as follows:

For the purposes of this title, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

This construction by Congress is consistent with the broad purpose of the estate tax and clarifies any ambiguity that might otherwise attach to the statute.

*Decision will be entered for the respondent.*

[2] The Report of the Finance Committee of the Senate Revenue Bill of 1932, p. 50, section 804, recites, in part as follows:

"This amendment excludes, in determining 'consideration in money or money's worth,' the value of a relinquished, or a promised relinquishment of, dower, curtesy, or other martial rights in decedent's property. Section 302 (a) and (b) of the 1926 act require the value of such an interest to be included in the gross estate, and, if its value may, in whole or in part, constitute a consideration for an otherwise taxable transfer (as has been held to be so), or an otherwise unallowable deduction from the gross estate, the effect produced amounts to a subversion of the legislative intent expressed in section 302 (a) and (b)."